**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MARTIN CALLOWAY,

                         Plaintiff,

    v.                                                   No. 07-CV-664
                                                        (TJM/DRH)

FRANK C. DENANE, Director, Corr. Dental
Services; DAWN CRULL, Nurse, Cayuga
Correctional Facility; CANDY BONVINNO;
and TOM NAPOLI,

                        Defendants.

---

**APPEARANCES:**                                 **OF COUNSEL:**

MARTIN CALLOWAY
03-B-0718
Plaintiff Pro Se
Lakeview Shock Incarceration
Correctional Facility
Post Office Box T
Brocton, New York 14716

HON. ANDREW M. CUOMO              DAVID L. COCHRAN, ESQ.
New York State Attorney General        Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Martin Calloway ("Calloway"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, four DOCS employees, violated his constitutional

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

rights under the Eighth Amendment in the provision of dental care.  Compl. (Docket No. 1).  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 36.  Calloway opposes the motion.  Docket No. 40.  For the following reasons, it is recommended that defendants' motion be granted.

## I.  Background

The facts are related in the light most favorable to Calloway as the non-moving party.  See subsection II(A) infra.

On April 18, 2003, Calloway was incarcerated at Five Points Correctional Facility ("Five Points") where he refused recommended extraction of his front teeth.  D'Silva Aff. (Docket No. 36-4) ¶ 6. Calloway reported that his loosened teeth resulted from a motor vehicle accident in 2000.  Id.[2]  The problem, however was exacerbated by poor oral hygiene.  Id.  Calloway was placed on a waiting list for partial replacements for his front teeth in November 2005.  Compl. (6).  From the time of his incarceration in 2003 to the filing of the complaint four years later, Calloway had twenty-eight examinations by the dental services, sixteen of which dealt specifically with his front teeth.  D'Silva Aff. ¶ 5.

The examinations included the folloiwng events.  On August 11, 2003, Calloway received a full mouth cleaning and an x-ray of his mouth.  D'Silva Aff. ¶ 8.  Calloway was scheduled to have certain lower teeth extracted.  Id.  On September 17, 2003, Calloway refused treatment.  D'Silva Aff. ¶ 9.  On April 15, 2004, Calloway requested to be placed on a waiting list for a tooth filling.  Id. ¶ 10.  On July 28, 2004, Calloway received another full

---

[2]On August 5, 2003, Calloway reported to a dentist that the movement in his lower teeth resulted from being shot in the face.  D'Silva Aff. ¶ 7.

mouth cleaning and stated that he had reconsidered the option of extraction. Id. ¶ 11. On August 20, 2004, Calloway reported pain in tooth #18 and was scheduled to have it extracted. Id. ¶ 12. On September 17, 2004, the tooth was extracted and another extraction was scheduled for the next appointment. Id. ¶ 13. On October 15, 2004, Calloway refused dental treatment due to a family visit. Id. ¶ 14. Four days later, dental staff removed two more teeth. Id. ¶ 15. On October 27, 2004, sutures were removed and Calloway was scheduled for another extraction. Id. ¶ 17.

On November 30, 2005, Calloway requested the extraction of certain lower teeth. D'Silva Aff. ¶ 19. Calloway underwent a full mouth cleaning and additional x-rays were taken. Id. Two weeks later, Calloway was unable to attend his dental appointment. Id. ¶ 20. On April 10, 2006, Calloway underwent another dental screening, complained of extreme pain in another tooth, but stated that he could "wait on the filling list." Id. ¶ 22. Dental staff also provided Calloway with a prescription for penicillin and ibuprofen and scheduled another extraction. Id. ¶ 22. Ten days later, three more teeth were extracted. Id. ¶ 23.[3] On April 27, 2006, Calloway was examined again, an x-ray was taken, and a follow-up cleaning appointment was scheduled. Id. ¶ 24. At an examination on July 13, 2006, it was determined that Calloway did not require any fillings. Id. ¶ 25. However, Calloway's gums were bleeding and swollen, the pain prevented him from eating at times, and he suffered immense pain which went untreated from July 28, 2006 until April 25, 2007. Compl. (7).

---

[3] Calloway's complaint states that he has been on a waiting list for partial dentures since 2005 and that five of his lower front teeth were extracted in April 2006. Compl. (6). The record indicates that by April 2006, six of Calloway's lower teeth had been extracted. D' Silva Aff. ¶¶ 13, 15, 23.

3


In December 2006, Calloway was informed that he would be placed on the roster for additional dental work but was never called. Compl. (7). In January 2007, Calloway was precluded from attending his appointment by defendants Bonvinno. Id. (6); Docket No. 40 at 2. Calloway was in the shower when he was informed that he had one minute to prepare for a dental appointment. Compl. (6); Docket No. 40 at 2. Bonvinno waited a short time before he informed Calloway that he was taking too long and departing. Docket No. 40 at 2. On January 5, 2007, Calloway received a dental cleaning and was also approved for partial dentures for his lower teeth. D'Silva Aff. ¶ 26. During that appointment, defendant Crull, a nurse, prescribed Calloway medication for the pain. Compl. (7).

Calloway was paroled from prison from October 11, 2007 until his re-incarceration at Elmira Correctional Facility ("Elmira") on January 30, 2008. D'Silva Aff. ¶¶ 27, 33(2). On March 21, 2008, Calloway requested a partial denture and a treatment plan was initiated. Id. ¶ 28. On June 5, 2008, Calloway received another oral cleaning and x-rays were taken. Id. ¶ 29. On June 30, 2008, the dental department began making Calloway's lower partial denture. Id. ¶¶ 30, 31. On September 12, 2008, Calloway received his dentures. Id. ¶ 32.

## II. Discussion

Calloway contends that his Eighth Amendment rights were violated when Bonvinno prevented him from attending his dental appointment and due to the extraordinary delay in receiving his lower partial dentures. Defendants argue that Calloway has failed to prove a cognizable claim.

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).. However, the mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Eighth Amendment

The Eighth Amendment encompasses the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway, 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Because there is no distinct litmus test, a

6

serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

It is questionable whether Calloway has alleged a sufficiently serious medical need.

> A cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, see Fields v. Gander, 734 F.2d 1313, 1314-15 (8th Cir.1984) ( "severe pain" due to infected tooth), the deterioration of the teeth due to a lack of treatment, see Boyd

7

> v. Knox, 47 F.3d 966, 969 (8th Cir.1995) (three-week delay in
> dental treatment aggravated problem), or the inability to engage in
> normal activities, Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th
> Cir.1989) (plaintiff complained that he was unable to eat properly);
> cf. Dean v. Coughlin, 623 F. Supp. 392, 404 (S.D.N.Y. 1985)
> (holding that "dental needs-for fillings, crowns, and the like-are
> serious medical needs as the law defines that term"), vacated on
> other grounds, 804 F.2d 207 (2d Cir.1986).

Chance, 143 F.3d at 703. Calloway's claims of indifference stem from defendants' delay in providing lower partial dentures after extracting his teeth. As a result of this alleged indifference, Calloway alleges intense pain and occasional inability to eat.

However, Calloway's contentions of intense pain are belied by his own statements that his teeth had been severely damaged since 2000, three years before his first incarceration, by either trauma due to a motor vehicle accident or a gun shot wound to his face. D'Silva Aff. ¶¶ 6, 7. There is no indication that Calloway ever sought dental care for his condition prior to his incarceration. Thus, the undisputed record shows that Calloway lived with this condition for at least three years before his incarceration and four years prior to consenting to having any teeth extracted. Additionally, Calloway asserts only the occasional inability to eat. Thus, the extent to which his condition affected his ability to engage in normal activities is unclear.

However, it is unnecessary to decide this question because even if Calloway is deemed to have shown a serious medical need, he has failed to show deliberate indifference. As noted, Calloway received numerous dental services. He was provided with annual dental prophylactic cleanings, examinations, and x-rays from 2003 to 2008, presumably missing what would have been a regularly scheduled appointment in 2007 due to his release on parole. D'Silva Aff. ¶¶ 8, 11, 19, 22, 24, 27, 29, 33(2). Additionally, despite Calloway's

8

early refusals to comply with recommendations to extract the teeth, defendants still continued to recommend and eventually perform six extractions for his severely damaged teeth after Calloway changed his mind. Id. ¶¶ 6, 11, 12, 15, 23. Moreover, Calloway was approved and provided with a lower partial denture. id. ¶¶ 28, 32. These undos[ited facts demonstrate that Calloway received timely dental care.

Additionally, to the extent that Calloway claims deliberate indifference due to the delay in providing his partial lower dentures, that must be evaluated in context. Calloway had all of his teeth removed by April 2006 and dental records indicate that as of July 2006, his remaining teeth were healthy enough not to require any additional fillings. D'Silva Aff. ¶¶ 13, 15, 23, 25. On January 5, 2007, Calloway was again examined and was approved for dentures. Id. ¶ 26. However, nine months later Calloway was released from prison. Id. ¶ 27. There is no evidence that Calloway ever sought dental care while he was released. When he was re-incarcerated three and one-half months later, he was detained at a different correctional facility. Id. By March 21, 2008, requests were again made for Calloway's dentures. Id. ¶ 28. These circumstances, including Calloway's release and re-incarceration at a different facility, explain any delay in the provision of his dentures. Thus, no evidence has been proffered that any delay was unreasonable.

Calloway asserts that his gums were bleeding, swollen, and causing unbearable pain from July 2006 until April 2007 and that he was prevented from attending his January appointment. Those contentions, however, also fail. Medical records indicate that Calloway received dental care on July 13, 2006 and January 5, 2007. D'Silva Aff. ¶¶ 25, 26. Dental personnel did not note any swelling, bleeding, or serious injury. Calloway's teeth were cleaned, it was determined that he needed no fillings, and his dentures were

9

approved. Id. Calloway was also prescribed medication to alleviate his symptoms. Compl. (7). The care and prescription were done in a timely manner. Nothing in the record suggests any improper treatment or that any action was done for any malicious or sadistic reason. Calloway's disagreement with the medication prescribed does not rise to the level of deliberate indifference. Sonds, 151 F. Supp. 2d at 312. Even if this treatment was not medically reasonably, defendants' actions would at their worst constitute mere negligence and are still insufficient to establish an Eighth Amendment claim. Hathaway, 99 F.3d at 553.

Finally, Calloway claims that he was deliberately prevented from attending his January 2007 appointment. This claim is directly contradicted by the evidence in the record, indicating that Calloway received treatment on January 5, 2007. D'Silva Aff. ¶ 26. However, even if another incident occurred later in January, Calloway was informed that he was to report to his appointment and he was not ready at the appointed time. There is nothing proffered, nor does the record indicate, that Bonvinno had any control over when Calloway was brought to his appointment. Additionally, Calloway's inability to report for his appointment on time caused him to miss his appointment, not Bonvinno's alleged malice or wantonness. There is no evidence that she took any action to delay or deny Calloway's care.

Accordingly, defendants' motion should be granted on this ground.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for

approved. Id. Calloway was also prescribed medication to alleviate his symptoms. Compl. (7). The care and prescription were done in a timely manner. Nothing in the record suggests any improper treatment or that any action was done for any malicious or sadistic reason. Calloway's disagreement with the medication prescribed does not rise to the level of deliberate indifference. Sonds, 151 F. Supp. 2d at 312. Even if this treatment was not medically reasonably, defendants' actions would at their worst constitute mere negligence and are still insufficient to establish an Eighth Amendment claim. Hathaway, 99 F.3d at 553.

Finally, Calloway claims that he was deliberately prevented from attending his January 2007 appointment. This claim is directly contradicted by the evidence in the record, indicating that Calloway received treatment on January 5, 2007. D'Silva Aff. ¶ 26. However, even if another incident occurred later in January, Calloway was informed that he was to report to his appointment and he was not ready at the appointed time. There is nothing proffered, nor does the record indicate, that Bonvinno had any control over when Calloway was brought to his appointment. Additionally, Calloway's inability to report for his appointment on time caused him to miss his appointment, not Bonvinno's alleged malice or wantonness. There is no evidence that she took any action to delay or deny Calloway's care.

Accordingly, defendants' motion should be granted on this ground.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for

summary judgment (Docket No. 36) be **GRANTED** in all respects and that judgment be entered for all defendants on all claims**.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 31, 2009
       Albany, New York

_David R. Homer_
United States Magistrate Judge